# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.M.**

**No. 19-0048** (Randolph County 2018-JA-109)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.M., by counsel J. Brent Easton, appeals the Circuit Court of Randolph County's December 12, 2018, order terminating his parental rights to A.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melissa T. Roman, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent based upon insufficient evidence and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the mother in September of 2018. According to the DHHR, the mother called 9-1-1 to report sexual abuse perpetrated by petitioner against their child. The mother reported that petitioner helped the child out of the bathtub and accompanied her into the bedroom to assist her in getting ready for bed. After an "awkward silence," the mother entered the room and observed petitioner thrusting his erect penis over the child, who was clothed only in a diaper. The mother took the child to the hospital for evaluation, but subsequently retracted her statements and returned to the family home after leaving the hospital. The child remained with DHHR personnel at that time.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

An amended petition was subsequently filed in October of 2018. The amended petition added allegations that on the night of the incident, petitioner confessed that his penis became a "little erect" while playing with the child and "popped out" of his boxers at the same time the mother walked into the room. According to petitioner, this was not the first time he had an erection while playing with the child and further stated "this is not a big deal, and he can't control it." Approximately two weeks later, petitioner again admitted to "bouncing [the child] on the bed while humping her diaper, leg, and the comforter on the bed with an erect penis." Petitioner was arrested following his confession.

At an adjudicatory hearing held in November of 2018, recordings of petitioner's confession and the mother's call to 9-1-1 were played in open court, and the DHHR presented the testimony of several witnesses, including the 9-1-1 operator, a law enforcement officer, a Child Protective Services ("CPS") worker, and the mother. The recording of the 9-1-1 call established that the mother reported observing petitioner "humping [the child] through her diaper." The mother also reported that, upon seeing her, he "got off [the child] and his [penis] was hard." The mother reported to the 9-1-1 operator that petitioner had tried to minimize the situation, but she stated "I didn't want [petitioner] to tell me I didn't see what I saw. I swear to God I can show you what I saw." Testimony established that, on the night of the incident, petitioner conceded to having an erection while playing with the child, but stated that the conduct was "not intentional" and further stated that the mother had overreacted in reporting abuse. However, the recording of petitioner's confession[2] established that he later confessed to sexually abusing the child. As heard by the recording, petitioner reported that, upon bouncing the child on the bed, "I was getting into the motion a little bit" and "humping something, the blanket[,] her leg, her diaper. It could have been all three of them." Petitioner also confessed to touching the child's leg and/or diaper with his erect penis. The testimony of the police officer corroborated the recording of the confession. After hearing evidence, the circuit court found that petitioner engaged in inappropriate sexual contact with the child and adjudicated him as an abusing parent.

Later in November of 2018, the circuit court held a dispositional hearing wherein the DHHR moved the court to take judicial notice of the testimony presented at the adjudicatory hearing, which it granted without objection. After hearing argument, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the child's welfare, and, accordingly, terminated his parental rights. It is from the December 12, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review in cases such as this:

---

[2]The transcript of the hearing indicates that some parties had trouble hearing the recording of the confession at times. However, the volume and the microphone were adjusted and the circuit court stated that it could hear the confession much better afterwards.

[3]The mother's parental rights were also terminated below. According to the guardian, the DHHR is searching for an adoptive placement for the child and the permanency plan is adoption.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent based upon insufficient evidence that he sexually abused the child. According to petitioner, the evidence presented to the circuit court was conflicting at best. Petitioner argues that the mother's testimony established that she fabricated the story and further notes that she was described as having a "histrionic personality disorder" in her psychological evaluation report, which causes her to "assume the worst in situations and incorrectly ascribe the worst motives to others." Further, his confession, while incriminating, was suggested by the interviewer rather than "spontaneously provided" by petitioner. We find petitioner's arguments to be without merit.

We have previously noted as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id*. at 546, 759 S.E.2d at 777 (citing *Brown v. Gobble*, 196 W. Va. 559, 564, 474 S.E.2d 489, 494 (1996)). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* at 546, 759 S.E.2d at 777 (quoting *Cramer v. W. Va. Dep't of Highways*, 180 W. Va. 97, 99 n.1, 375 S.E.2d 568, 570 n.1 (1988)). Pursuant to West Virginia Code § 49-1-201, an abused child is one whose health or welfare is harmed or threatened by "[s]exual abuse or sexual exploitation."

Having reviewed the record, we find that sufficient evidence existed to adjudicate petitioner as an abusing parent. The testimony of the CPS worker and the police officer, along with the recorded confession, clearly establish that petitioner admitted to rubbing his erect penis on the child for sexual gratification. While petitioner argues that his confession was responsively

provided to the officers' questions rather than "spontaneously provided," he fails to argue what portion of the confession was untrue. Further, at the end of the recording, petitioner conceded that he had been treated fairly by the officers and stated that "I know you['ve] got a job to do." Accordingly, we fail to see how petitioner's confession was coerced or inaccurate. Moreover, petitioner's arguments regarding the mother's testimony are entirely based upon her credibility. We have previously held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (citations omitted). During the proceedings below, the circuit court weighed the mother's testimony and found that her recantation of her reports of sexual abuse were not credible, especially given petitioner's clear admission of the same. Accordingly, we decline to reassess the circuit court's credibility determinations and find that it properly adjudicated petitioner as an abusing parent based upon his confession and other substantial evidence.

Petitioner also argues that the circuit court erred in terminating his parental rights without granting him a post-dispositional improvement period. While petitioner concedes that the circuit court was under no obligation to grant his motion for an improvement period, he insists it nevertheless erred in failing to grant him one given the conflicting nature of the evidence presented.[4] We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Moreover, pursuant to West Virginia Code § 49-4-602(d)(1), reasonable efforts to preserve the family are not required when "[t]he parent has subjected the child . . . to aggravated circumstances which include . . . sexual abuse."

We first note that the DHHR was not required to make efforts to preserve the family due to the aggravated circumstances of sexual abuse. Further, contrary to petitioner's argument, he failed to demonstrate that he was entitled to an improvement period. In his brief on appeal, petitioner fails to cite to any portion of the record wherein he established that he would be likely to fully participate in an improvement period. Moreover, apart from his assertion that the circuit court erred in failing to grant him an improvement period, petitioner fails to argue how he would have complied with any services or addressed the conditions of abuse. Given the aggravated circumstances of this case and petitioner's failure to demonstrate that he was likely to fully

---

[4]Again, to the extent petitioner argues that the mother's testimony contradicted testimony regarding his confession of sexual abuse, we note that the circuit court weighed her testimony and afforded weight accordingly. We decline to further address this issue. *See Michael D.C.*, 201 W. Va. at 388, 497 S.E.2d at 538.

4

participate in an improvement period, we find no error in the circuit court's decision to deny petitioner an improvement period.

We further find no error in the circuit court's decision to terminate petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-604(c)(5), "no reasonable likelihood" includes a situation wherein the abusing parent or parents

> have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the child.

As shown above, petitioner sexually abused the child. Given the evidence of the sexual abuse, the circuit court found that "there is no treatment that could assure the [c]ourt of a child's safety in [petitioner's] care." Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future due to his sexual abuse of the child, which was to such a degree as to preclude the use of resources to mitigate or resolve the problems.

While petitioner argues that it was error to terminate his parental rights without first employing a less-restrictive disposition, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the aggravated circumstances of sexual abuse and petitioner's inability to address the conditions of abuse, even with treatment, we find no error in the circuit court's termination of petitioner's parental rights.

Finally, because a permanent placement has not yet been found for A.M., this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For these reasons, we find no error in the decision of the circuit court, and its December 12, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

6